Bryan King Sheldon (SBN 116219)
George Busu (SBN 235993)
LIMNEXUS LLP
1055 West Seventh Street, 28th Floor
Los Angeles, California 90017
Tel.: (213) 955-9500/Fax: (213) 955-9511
Email: Bryan.Sheldon@LimNexus.com
　　　　George.Busu@LimNexus.com

Attorneys for Plaintiff
Beverly Loan Company, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| BEVERLY LOAN COMPANY, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> BEVERLY HILLS LOAN AND JEWELRY, LLC, a California limited liability company; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:16-cv-09630 <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, UNFAIR BUSINESS PRACTICES, AND UNJUST ENRICHMENT** <br><br> **(JURY TRIAL DEMANDED)** |

　　　Plaintiff Beverly Loan Company, Inc. complains and alleges as follows against defendant Beverly Hills Loan and Jewelry, LLC.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1338 (action related to trademark and/or unfair competition claim substantially related to trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction).

2. Venue is proper in this court because plaintiff Beverly Loan Company, Inc.'s principal place of business, and on information and belief the defendants' principal place of business, is in Beverly Hills, California, within the Central District of California, and the acts complained of occurred entirely or primarily within this district.

## THE PARTIES

3. Plaintiff Beverly Loan Company, Inc. ("plaintiff" or "Beverly Loan Company") is a California corporation that maintains its principal place of business in Beverly Hills, California.

4. Defendant Beverly Hills Loan and Jewelry, LLC ("defendant") is a California limited liability company that, on information and belief, maintains its principal place of business in Beverly Hills, California.

5. The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants sued as Does 1 through 10 are unknown to plaintiff. Plaintiff therefore sues said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, plaintiff will amend this pleading accordingly.

6. Plaintiff further alleges that the defendants sued as Does 1 through 10, inclusive, are jointly, severally and concurrently liable and responsible with the named defendant upon the claims hereinafter set forth.

7. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, defendant and the defendants sued as Does 1 through 10,

inclusive, and each of them, were the agents, servants and employees of every other defendant and the acts of each defendant, as alleged herein, were performed within the course and scope of that agency, service or employment.

## PLAINTIFF'S BUSINESS AND ITS MARKS

8. Beverly Loan Company has achieved significant fame and prestige in Los Angeles and nationwide as the "pawn broker to the stars" with a reputation for and association with high end goods such as original artwork, entertainment memorabilia, jewelry, and fine watches. Beverly Loan Company has been recognized as an elite pawn brokerage in several national publications, including articles in The Los Angeles Times, Forbes, The New York Post, Wall Street Journal, The New York Times, Newsweek, People, and USA Today. Beverly Loan Company has also been referred to in news reports, including the CBS Evening News and NPR.

9. Beverly Loan Company was founded in Beverly Hills, California in 1938 by Louis Zimmelman. By the 1950's Beverly Loan Company was well established with a long list of famous clients because it had, and continues to have, a reputation as a professional high-end pawn brokerage. It is located on the third floor of a bank building and has the look and feel of a fine jewelry store. Beverly Loan Company places an emphasis on security, with a full-time security guard on site at all times of operation, as well as a bank vault in which it stores its clients' valuable assets. Its pawn brokers dress professionally, and its collateral loan business is conducted in private offices. Plaintiff has made confidentiality its inviolable rule. This decision has served it well -- in 78 years no name of any client has ever been revealed without the client's permission.

10. Also by 1950, Beverly Loan Company had become one of the most respected businesses in the collateral loan industry. Its owners were among the original founders of the Collateral Loan and Secondhand Dealers Association (now

known as the California Pawnbrokers Association or CAPA), a private, non-profit, industry organization committed to improving the pawnbroker industry in California through education and legislation, including encouraging other pawnbrokers to adhere to its code of ethics. Beverly Loan Company executives continue this tradition today, serving on the boards of both the National Pawnbrokers Association and the California Pawnbrokers Association.

11. Beverly Loan Company has a website that promotes its business in Beverly Hills and throughout the world. The website address is www.beverlyloan.com and prominently displays the Beverly Loan Company name and trademarks. Beverly Loan Company also invests significant resources in advertising and marketing to promote its trademarks.

12. On August 22, 2008, Plaintiff filed two federal trademark applications with the United States Patent and Trademark Office ("USPTO"), one for a stylized trademark for BEVERLY LOAN COMPANY (Serial No. 77555805) and the other for the words BEVERLY LOAN COMPANY (Serial No. 77553588) (collectively, the "Marks"). Both Marks are for financial services in the field of money lending in Class 36. Both applications matured to registration on June 23, 2009 and were assigned, respectively, registration numbers 3,642,473 and 3,642,465. On January 21, 2015, the USPTO deemed both registrations incontestable.

13. Based on this long, prominent and extensive use of the BEVERLY LOAN COMPANY name and distinctive trademarks, Plaintiff owns the exclusive right to use the BEVERLY LOAN COMPANY name and trademarks in connection with financial services in the field of money lending.

14. The Marks and associated goodwill are of great and incalculable value and have become associated in the public mind with services of the very highest quality and reputation, finding their source in Beverly Loan Company.

15. Plaintiff is therefore entitled to an injunction against others who use the BEVERLY LOAN COMPANY name and trademarks or similar trademarks in

connection with the same or related types of goods or services, as such use causes confusion to consumers. Plaintiff is also entitled to an award of compensatory and other monetary damages arising from the infringement of its Marks.

## THE INFRINGING ACTS OF DEFENDANT

16. Plaintiff is informed and believes, and on that basis alleges, that Elias Shokrian owns and controls defendant and its business. Through this business defendant is attempting to misappropriate the distinctive and famous Marks and goodwill of plaintiff to unfairly compete with plaintiff and thereby dilute plaintiff's name and Marks, for defendant's profit.

17. To this end, in or about December 2016, defendant opened a pawn brokerage called BEVERLY HILLS LOAN AND JEWELRY at 317 Robertson Boulevard in Beverly Hills, California. The location of defendant's business is less than two miles from plaintiff's physical business location. Defendant erected signs bearing its infringing business name in about October or November, 2016 in preparation for opening its business. Prior to defendant opening for business, plaintiff engaged in a course of correspondence with Elias Shokrian by which Mr. Shokrian was advised of the infringing nature of defendant's business name and requesting that he choose a non-infringing name for his new business.

18. By using a name with identical or confusingly similar elements to plaintiff's name and Marks, in close proximity to plaintiff's physical business location, without the consent of plaintiff and in violation of plaintiff's superior rights, defendant was and is attempting to create an association between his pawn brokerage and Beverly Loan Company.

19. Since defendant erected signs for BEVERLY HILLS LOAN AND JEWELRY there has been actual consumer confusion regarding BEVERLY HILLS LOAN AND JEWELRY'S affiliation or association with Beverly Loan Company. For example, plaintiff has received a phone call from one of its existing

1 customers who asked whether plaintiff had moved its business to the site of
2 defendant's business.

3     20.    By using a name that is confusingly similar to BEVERLY LOAN
4 COMPANY, in close proximity to Beverly Loan Company, without the consent of
5 plaintiff and in violation of plaintiff's superior rights, defendant is intentionally
6 attempting to capitalize on the goodwill and reputation of Beverly Loan Company
7 and its name and registered Marks.

8     21.    Defendant's unauthorized use of the name and Marks or similar
9 trademarks in connection with a pawn brokerage and related financial services is
10 likely to cause and has caused actual confusion among the consuming public, who
11 may believe or have falsely believed, that BEVERLY HILLS LOAN AND
12 JEWELRY is the same as plaintiff, or is in some way associated with, or sponsored
13 or authorized by plaintiff when, in fact, it is not. If defendant's unauthorized use
14 of the name and Marks or similar trademarks is not stopped in the future the
15 consuming public will continue to falsely believe that defendant's business is the
16 same as plaintiff or in some way associated with, or sponsored or authorized by
17 plaintiff when, in fact, it is not.

18     22.    By its actions, defendant is tarnishing plaintiff's reputation as a
19 discreet, high-end collateral lender.

## FIRST CLAIM FOR RELIEF
### (TRADEMARK INFRINGEMENT AGAINST ALL DEFENDANTS)
### (15 U.S.C. § 1114)

24     23.    Plaintiff incorporates the allegations of paragraphs 1 through 22 of
25 this complaint.

26     24.    Plaintiff owns the registered and incontestable Marks. Defendant has
27 infringed the Marks by using a variation of the Marks in connection with its

business, which infringing mark is strikingly and confusingly similar and/or a colorable imitation of plaintiff's Marks.

25. Defendant's use of the infringing mark is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of plaintiff with defendant, or as to the origin, sponsorship, or approval of defendant's goods or services.

26. Defendant's use of the infringing mark enables defendant to benefit unfairly from plaintiff's reputation and success, thereby giving defendant's business a commercial value it would not have otherwise.

27. Prior to defendant's first use of the infringing mark, defendant was aware of plaintiff's business and had either actual notice and knowledge, or constructive notice of plaintiff's registered and incontestable Marks. Defendant's infringement of plaintiff's Marks as described herein has been and continues to be intentional, willful and without regard to plaintiff's rights.

28. Plaintiff has been and will continue to be irreparably harmed and damaged by defendant's conduct, and plaintiff lacks an adequate remedy at law to compensate for this harm and damage.

29. Plaintiff is informed and believes, and on that basis alleges, that defendant has gained profits by virtue of its infringement of plaintiff's Marks.

30. Plaintiff also has sustained damages as a direct and proximate result of defendant's infringement of plaintiff's Marks in an amount to be proven at trial.

31. Because defendant's infringement has been committed with willfulness, and with intent to confuse and deceive the public, plaintiff is entitled to treble its actual damages or defendant's profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

32. Plaintiff is further entitled to an injunction preventing defendant and its agents and employees from further infringing plaintiff's Marks. **SECOND**

## **CLAIM FOR RELIEF**
## **(COMMON LAW UNFAIR COMPETITION**
## **AGAINST ALL DEFENDANTS)**

33. Plaintiff incorporates the allegations of paragraphs 1 through 32 of this complaint.

34. Defendant has engaged in willful unfair competition under common law.

35. As the direct and proximate result of defendant's willful conduct, plaintiff has suffered damages in an amount to be determined at trial.

36. Defendant is liable for such willful unfair competition.

## **THIRD CLAIM FOR RELIEF**
## **(UNFAIR BUSINESS PRACTICES AGAINST ALL DEFENDANTS)**
## **(CALIFORNIA BUSINESS AND PROFESSIONS CODE)**

37. Plaintiff incorporates the allegations of paragraphs 1 though 36 of this complaint.

38. The conduct of defendant as alleged herein constitutes unfair business practices and false advertising under California Business and Professions code sections 17200 *et seq*. and 17500 *et seq*.

39. Plaintiff is entitled to an injunction preventing defendant and its agents and employees from offering any services or goods in conjunction with use of the infringing mark; or taking any other action reasonably likely to cause customer confusion. Plaintiff is also entitled to an award of costs and attorneys fees incurred herein.

LIM NEXUS LLP

## FOURTH CLAIM FOR RELIEF

### (UNJUST ENRICHMENT AGAINST ALL DEFENDANTS)

40. Plaintiff incorporates the allegations of paragraphs 1 though 39 of this complaint.

41. As a result of the conduct alleged herein, defendant has been unjustly enriched to plaintiff's detriment. Plaintiff seeks an accounting and disgorgement of all ill gotten gains and profits resulting from defendant's inequitable activities.

**WHEREFORE,** plaintiff prays for relief against defendant as follows:

A. For general damages and special damages according to proof, or statutory damages at plaintiff's election;

B. Treble damages for any infringement found to be willful;

C. For an accounting of defendant's ill gotten gains;

D. For an injunction preventing defendant and its agents and employees from offering any services or goods in conjunction with use of the infringing mark; or taking any other action reasonably likely to cause customer confusion;

E. For an award of costs and attorneys fees incurred herein; and

F. For such other relief as is just.

Dated: December 29, 2016

Bryan King Sheldon
George Busu
LIMNEXUS LLP

By: _/s/ Bryan King Sheldon_
Bryan King Sheldon
Attorneys for Plaintiff
Beverly Loan Company, Inc.

# DEMAND FOR JURY TRIAL

Plaintiff Beverly Loan Company, Inc. hereby demands a jury trial in this action.

Dated: December 29, 2016

Bryan King Sheldon
George Busu
LIMNEXUS LLP


By: */s/ Bryan King Sheldon*
Bryan King Sheldon
Attorneys for Plaintiff
Beverly Loan Company, Inc.